UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**Shamel Kelly**,
individually and d/b/a Juice & Moore.,

Plaintiff,

vs.

CAFN: 26-cv-5248

**City of New York**;
**Edward Caban**,
former New York City Police Commissioner,
in his individual capacity;
**Ray Martin**, individual capacity;
**James Caban**, individual capacity;
**Lieutenant Cunningham**, individual capacity;
**Captain Miele**, individual capacity;
**Sergeant Geovani Sanchez, Shield #4147**, individual capacity;
**Officer Jake Riley, Shield #7114**, individual capacity;
**Officer Ronald Louie, Shield #6210**, individual capacity;
**Officer John Emilio, Shield #4196**, individual capacity;
**Officer Hendricks, Shield #4372**, individual capacity;
**Officer Weinstein, individual capacity**;
**John Doe Officers 1–50; Jane Doe Officers 1–50**,

Defendants.

COMPLAINT AND JURY DEMAND

COMES NOW, Plaintiff Shamel Kelly individually and d/b/a Juice & Moore., through their undersigned counsel, files this Complaint, against City of New York; Edward Caban, former New York City Police Commissioner; Ray Martin, individual capacity; James Caban, individual capacity; Officer Jake Riley, Shield #7115,

individual capacity; Lieutenant Cunningham, individual capacity; Captain Miele, individual capacity; Sergeant Sanchez, Shield #4147, individual capacity; Officer Louie, Shield #6210, individual capacity ; Officer Emilio, Shield #4196, individual capacity; Officer Hendricks, Shield #4372, individual capacity; Officer Weinstein, individual capacity; John Doe Officers 1–50; Jane Doe Officers 1–50, (Collectively Defendants Officers of the 60th precinct) for violation of his federal protected rights.

## NATURE OF THE ACTION

1. This is a civil rights action seeking damages for Defendants' violations of Plaintiff's rights, privileges, and immunities under the United States Constitution, and the Civil Rights Act of 1871, 42 U.S.C. § 1983. This is a civil rights action arising from an unlawful and retaliatory campaign conducted against Plaintiff and Plaintiff's business, Juice & Moore, by members of the New York City Police Department ("NYPD") and New York City.
2. Defendant officers engaged in repeated acts of harassment, retaliatory enforcement, unlawful searches, intimidation, selective policing, abuse of governmental authority, and interference with Plaintiff's business operations after Plaintiff exercised protected constitutional rights, including filing multiple complaints against members of NYPD 60th precinct.

3. The actions of the Defendants resulted in significant economic damage to the Plaintiff, along with harm to his reputation and a loss of business goodwill. Consequently, due to this unlawful harassment and retaliation, the Plaintiff has not only lost his capacity to earn a living as a business owner but also had to shut down his business. Therefore, the Plaintiff initiates this lawsuit to assert his rights and seek appropriate compensation for his injuries.

## JURISDICTION AND VENUE

4. This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.
5. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.
6. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because the acts complained of occurred in Kings County, New York.
7. Plaintiff Shamel Kelly is an adult resident of the State of New York and owner/operator of Juice & Moore.
8. Defendant City of New York is a municipal corporation organized under the laws of the State of New York and responsible for the actions of the NYPD and its employees.
9. Defendants Officer Jake Riley, Officer Kylie Iversen, Lieutenant Cunningham, Captain Miele, Sergeant Sanchez, Officer Louie, Officer Emilio, Officer Hendricks, Officer Weinstein, and John/Jane Doe officers

were at all relevant times employees and/or agents of the NYPD acting under color of state law. (Collectively Defendants Officers of the 60th precinct), in their individual capacities.

10. Defendant Edward Caban, former New York City Police Commissioner, in his individual capacity.

11. Defendant Ray Martin, a former staffer in Former NYC Mayor Eric Adams' Community Affairs Unit, in his individual capacity.

12. Defendant James Caban, former NYPD Captain, in his individual capacity.

13. The identities of certain defendants are presently unknown to Plaintiff and are therefore sued herein as John and Jane Doe defendants. Plaintiff will amend the Complaint to substitute Doe's true name upon learning their identity.

## FACTUAL ALLEGATIONS

14. Plaintiff opened Juice & Moore in or about June 2022 in Kings County, New York.

15. Plaintiff lawfully operated the establishment and obtained a temporary liquor license in or about February 2023.

16. In or around September 2022, an NYPD officer approached the Plaintiff while the Plaintiff was seated outside the business, preparing to unload merchandise and products.

17. The Plaintiff informed the officer of their ownership of the establishment and presented proof of ownership.

18. The officer exhibited aggressive and hostile behavior towards the Plaintiff.

19. The officer told the Plaintiff "You do not own the streets; we own these streets; we are the NYPD."

20. The officer threatened the Plaintiff with enforcement action and issued a summons for an alleged illegal U-turn.

21. The summons was subsequently dismissed.

22. The Plaintiff subsequently lodged a formal misconduct complaint against the officer, designated as Complaint No. 202302752 to the NYC Civilian Complaint Review Board (CCRB).

23. Following the Plaintiff's complaint to the (CCRB), officers from Brooklyn 60th precinct of the NYPD made multiple visits to the Plaintiff's business.

24. From early 2023 through late 2023, at least fifteen uniformed officers were observed at the establishment on more than twenty distinct occasions.

25. These ongoing police presence interfered with business operations and discouraged customers from patronizing the establishment.

26. Despite their numerous visits, the officers often did not issue any valid summonses or violations.

27. The Plaintiff had reasonable grounds to believe that this conduct was retaliatory in nature, stemming from the Plaintiff's protected complaint activities.

28. In or about April 2023, the Defendant Jake Riley and Officer Kylie Iversen of the 60th precinct conducted a raid and search of Plaintiff's establishment.

29. Defendant Riley and Officer Iversen entered and searched portions of the premises without lawful justification, valid consent, or proper warrant authority.

30. Defendant Riley and Officer Iversen searched areas beyond the lawful scope of any permissible administrative inspection.

31. Defendant Riley and Officer Iversen seized music equipment and interfered with Plaintiff's business operations.

32. In response, the Plaintiff went to the 60th precinct to complain, while at the 60th precinct, NYPD Lieutenant Cunningham told the Plaintiff that he would "make his life a living hell and send inspections to his business every day."

33. No legitimate violations or criminal charges resulted from the incident.

34. A substantiated misconduct complaint was later filed concerning the incident, Complaint No. 202303045 to the CCRB.

35. In or about June 2023, more than forty NYPD officers from the 60th precinct and a representative of the New York State Liquor Authority conducted another raid of Plaintiff's establishment.

36. Defendants Officer Jake Riley, Lieutenant Cunningham, Captain Miele, Sergeant Sanchez, Officer Louie, Officer Emilio, Officer Hendricks, Officer Weinstein, and John Doe Officers 1–50; Jane Doe Officers 1–50, aggressively removed patrons from the premises and created an intimidating atmosphere.

37. The Defendant Officers and inspectors searched cabinets, drawers, storage areas, and backyard portions of the property, including areas outside Plaintiff's control.

38. Supervisory personnel Lieutenant Cunningham, Captain Miele, and Sergeant Sanchez participated in and/or authorized the operation.

39. Plaintiff received twenty-six alleged violations arising from the incident.

40. Plaintiff attended multiple hearings regarding the violations.

41. Ultimately, all violations were dismissed.

42. Upon information and belief, NYPD personnel coordinated directly with SLA personnel prior to the raid.

43. In or about August 2023, Plaintiff was referred to Ray Martin ("Defendant Martin"), a staffer in the Mayor's Community Affairs Unit regarding ongoing harassment by the 60th precinct.

44. Defendant Martin informed Plaintiff that he was already familiar with Plaintiff's establishment and suggested Plaintiff either sell the business or join a system that could help manage police-related issues.

45. Defendant Martin referred Plaintiff to an individual identified as James Caban ("Defendant J. Caban").

46. Defendant Caban is the twin brother of then NYC Police Commissioner Edward Caban.

47. Plaintiff contacted Mr. Caban and explained the circumstances.

48. Defendant J. Caban stated he could resolve Plaintiff's issues in exchange for payment and initially requested approximately $2,500.

49. Plaintiff declined Defendant J. Caban offer.

50. Upon Plaintiff's refusal, Defendant J. Caban told the Plaintiff that he would not remain open much longer.

51. Defendants J. Caban and Defendant Martin conspired to unlawfully obtain funds from the Plaintiff, and if the Plaintiff declined to comply, they coordinated with members of the 60th precinct to create an environment in which the Plaintiff's ability to conduct business would be severely hindered by persistent police harassment and intervention. Because Plaintiff refused to pay Mr. Caban, the 60th precinct's presence and harassment intensified significantly, leading to the Plaintiff's business closure.

52. Following Plaintiff's refusal to pay Mr. Caban, police presence intensified significantly.

53. On several occasions, more than ten police vehicles and dozens of officers from the 60th precinct appeared outside Plaintiff's business.

54. The repeated displays of force frightened patrons and damaged Plaintiff's reputation in the community.

55. Customers became reluctant to patronize the establishment due to fear and intimidation associated with the repeated police activity.

56. The Plaintiff experienced considerable financial setbacks due to the unwillingness of prospective patrons to frequent the Plaintiff's business, stemming from the overwhelming presence of police officers from the 60th precinct that consistently gathered in front of the Plaintiff's premises day after day.

57. The Defendants Officers persisted in their harassment and maintained their presence outside the Plaintiff's business during operational hours, particularly on weekends, until the Plaintiff was compelled to cease operations of Juice & Moore around November 2023. Records show officers visited the Plaintiff's business more than 60 times in the course of the year.

58. Former New York Police Department Commissioner Edward Caban (hereinafter referred to as "Defendant E. Caban") exonerated officers who

were found to have committed misconduct during a raid on the Plaintiff's business in April 2023.

59. Throughout his tenure as Commissioner of the New York Police Department, Defendant E. Caban consistently disregarded recommendations for disciplinary action against officers.

60. Defendant E. Caban intervened to prevent disciplinary measures against officers, exercising the power to override the board's recommendations more frequently than any previous police commissioner.

61. Defendant E. Caban cultivated an environment within New York City that allowed its officers to engage in misconduct and violate constitutional rights. This ongoing pattern and practice by New York City were the fundamental cause of the violations of the Plaintiff's constitutional rights and the resulting damages.

## FIRST CAUSE OF ACTION
(42 U.S.C. § 1983 – First and Fourteenth Amendment Retaliation)
(Defendants Officers/John and Jane Does of the 60th precinct)

62. Plaintiff repeats and realleges the preceding paragraphs.

63. Plaintiff engaged in protected activity by filing complaints against NYPD officers to the CCRB.

64. Defendants Officers of the 60th precinct retaliated against Plaintiff for engaging in constitutionally protected conduct.

65. Defendants Officers of the 60th retaliatory actions included repeated police visits, raids, intimidation, selective enforcement, and interference with Plaintiff's business until the Plaintiff was forced to close his business in November of 2023.

66. Defendants Officers actions were motivated by or substantially caused by Plaintiffs engaging in protected activity.

67. By retaliating against Plaintiff for his protected activity, Defendants Officers deprived Plaintiff of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution.

68. Defendants Officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment. Said acts by the Defendants Officers were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the First and Fourteenth Amendments to the United States Constitution.

69. The Defendants Officers acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard of Plaintiff's rights, privileges, welfare, and well-being, and are guilty of egregious and gross misconduct towards Plaintiff.

70. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff suffered and continues to suffer actual damages for reputational injury, lost past and future earnings, lost business opportunities, mental anguish, and severe psychological pain and suffering.

71. By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial.

SECOND CLAIM FOR RELIEF
(42 U.S.C. § 1983 – 14th Amendment Due Process violation)
(Against Defendants Officers/John and Jane Does of the 60th precinct)

72. Plaintiff repeats and realleges the preceding paragraphs 1-61.

73. At all times relevant hereto, Plaintiff had a valuable property interest in his business relationship and his status.

74. By engaging in the conduct set forth above, the Officer Defendants impermissibly deprived Plaintiff of his property interest without due process of law.

75. Defendants Officers of the 60th precinct retaliated against Plaintiff for engaging in constitutionally protected conduct.

76. Defendants Officers of the 60th retaliatory actions included repeated police visits, raids, intimidation, selective enforcement, and interference with Plaintiff's business until the Plaintiff was forced to close his business in November of 2023.

77. Defendants Officers actions were motivated by or substantially caused by Plaintiffs engaging in protected activity.

78. By retaliating against Plaintiff for his protected activity, Defendants Officers deprived Plaintiff of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

79. Defendants Officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment. Said acts by the Defendants Officers were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourteenth Amendment to the United States Constitution.

80. The Defendants Officers acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard of

Plaintiff's rights, privileges, welfare, and well-being, and are guilty of egregious and gross misconduct towards Plaintiff.

81. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff suffered and continues to suffer actual damages for reputational injury, lost past and future earnings, lost business opportunities, mental anguish, and severe psychological pain and suffering.

82. By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial.

THIRD CLAIM FOR RELIEF
(42 U.S.C. § 1983 - Due Process - Liberty Interest)
(Defendants Officers/John and Jane Does of the 60th precinct)

83. Plaintiff repeats and realleges the preceding paragraphs 1-61.

84. At all times relevant hereto, Plaintiff had a valuable liberty interest in his business relationship, his reputation, and his status.

85. By engaging in the conduct set forth above, including, without limitation, by:

(i) repeated police visits, raids, intimidation, selective enforcement, and interference with Plaintiff's business until the Plaintiff was forced to close his business in November of 2023.

86. The Officer Defendants' stigmatizing conduct has marred Plaintiff's reputation to such an extent that it was unable to keep his business open.

Stigmatizing Plaintiff in this manner, the Defendant Officer impermissibly denied Plaintiff his liberty interest without due process of law, in violation of the due process safeguards embodied in the Fifth and Fourteenth Amendments to the United States Constitution.

FOURTH CLAIM FOR RELIEF
(42 U.S.C. § 1983 - Supervisory Liability)
First, Fifth, and Fourteenth Amendments
(Against Defendant E. Caban, Defendant Cunningham, Defendant Miele, Defendant Sanchez (collectively "NYPD Supervisory Defendants")

87. Plaintiff repeats and realleges the foregoing paragraphs 1-61.

88. Defendant E. Caban, Defendant Cunningham, Defendant Miele, Defendant Sanchez (the "Police Department Supervisory Defendants") were, at all relevant times, supervisory personnel of the NYPD, with oversight responsibility over Defendants Officer Jake Riley, Shield #7114, Officer Louie, Shield #6210, Officer Emilio, Shield #4196, Officer Hendricks, Shield #4372, Officer Weinstein, and John and Jane Doe Officers 1–50.

89. The NYPD Supervisory Defendants were responsible for the training, supervision, and discipline of the Officer Defendant Police Officers, who, as set forth above, engaged in a pattern of harassment and retaliatory conduct against Plaintiff and violated his constitutional rights.

90. The NYPD Supervisory Defendants had actual or constructive knowledge that the Officer Defendant Police Officers were engaged in harassment and

retaliatory conduct that posed a pervasive and unreasonable threat to the constitutional rights of Plaintiff.

91. The response of the NYPD Supervisory Defendants to their knowledge of this threat to Plaintiffs constitutional rights was so inadequate as to show deliberate indifference or tacit approval of the Officer Defendant Police Officers' conduct.

92. The NYPD Supervisory Defendants knew of the continuing violation of constitutional rights attendant to this conduct yet failed to impose disciplinary measures or take corrective action to end it.

93. The NYPD Supervisory Defendants knew that police officers under their supervision, including the Officer Defendant Police Officers, would confront the situation wherein they would need to exercise discretion regarding how to deal with members of the public who own and operate, or are employed by restaurants and bars in the City of New York and Kings County, New York. and knew that there was a history of police officers mishandling this situation. Yet, on information and belief, the NYPD Defendants did not take any action to require or provide proper training or re-training on how police officers should exercise their discretion in the above-described situation, including, for example, the need not to allow retaliatory motives to influence or dictate how police officers dealt with those members of the public.

94. The NYPD Supervisory Defendants, by failing to train, supervise, and discipline the Officer Defendant Police Officers, disregarded the rights of those citizens who came into contact with those officers, including those citizens who own, operate, or are employed by restaurants and bars in New York City. In so failing, the NYPD Supervisory Defendants also disregarded the risk that such officers would allow retaliatory and other improper reasons to dictate or influence how they exercised their law enforcement authority. Such failure constituted deliberate indifference to Plaintiffs constitutionally protected rights.

95. As a direct and proximate result of the foregoing supervisory failures, Plaintiff was exposed to the Defendant Officers' illegal acts, which led to serious Injury.

96. The NYPD Supervisory Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment. Said acts by the NYPD Supervisory Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the First, Fifth, and Fourteenth Amendments to the United States Constitution.

97. The NYPD Supervisory Defendants acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard of Plaintiff's rights, privileges, welfare, and well-being, and are guilty of egregious and gross misconduct towards Plaintiff. As a direct and proximate result of the foregoing supervisory failures detailed above, Plaintiff suffered and continues to suffer actual damages for reputational injury, lost past and future earnings, lost business opportunities, mental anguish, and severe psychological pain and suffering. By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial.

FIFTH CLAIM FOR RELIEF
42 U.S.C. § 1983 - Municipal Liability
(Against Defendant City of New York)

98. Plaintiff repeats and realleges the foregoing paragraphs 1-61.

99. Former New York Police Department Commissioner Defendant E. Caban exonerated officers who were found to have committed misconduct during a raid on the Plaintiff's business in April 2023.

100. Throughout his tenure as the Commissioner of the New York Police Department, Defendant E. Caban consistently disregarded recommendations for disciplinary actions against officers.

101. Defendant E. Caban would intervene to prevent disciplinary measures against the officers, exercising a power to override the board's recommendations more frequently than any previous police commissioner.

102. Defendant E. Caban cultivated an environment within New York City that allowed its officers to engage in misconduct and violate constitutional rights.

103. This ongoing pattern and practice by New York City was the fundamental cause of the violations of the Plaintiff's constitutional rights and the resulting damages. This pattern and practice is so persistent and widespread that it constitutes a custom or practice of which constructive knowledge can be inferred on the part of defendant County.

104. Defendant NYC failed to properly train officers of the Police Department, including the Defendant Officers of the 60th precinct, thereby disregarding the rights of those citizens who came into contact with such officers, including those citizens who own, operate, or are employed by restaurants and bars in New York City. In so failing, the City also disregarded the risk that such officers would allow retaliatory and other improper reasons to dictate or influence how they exercised their law enforcement authority with respect to those citizens. Such failure constituted deliberate indifference to Plaintiff's constitutionally protected rights.

105. Defendant NYC failed to supervise, investigate, and discipline officers of the Police Department, including the Defendant Officers of the 60th precinct, thereby disregarding the rights of those citizens who came into contact with such officers, including those citizens who own, operate, or are employed by restaurants and bars in NYC. In so failing, Defendant NYC also disregarded the risk that such officers would allow retaliatory and other improper reasons to dictate or influence how they exercised their law enforcement authority with respect to those citizens. Such failure constituted deliberate indifference to Plaintiffs constitutionally protected rights.

106. The foregoing acts, omissions, failures, policies, customs, and practices of Defendant NYC caused the members of the Police Department, including the Defendant Officers of the 60th precinct, to believe that their illegal and improper actions would not be properly investigated, disciplined, or corrected, with the foreseeable result that they would allow retaliatory or other improper reasons to dictate or influence how they exercised their law enforcement authority.

107. On information and belief, Defendant NYC delegated decision-making authority to Defendant E. Caban, concerning (a) the treatment of hospitality businesses in the County and the citizens who own, operate, and are employed by them; (b) the filing of criminal charges and violations against such

businesses and citizens; (c) the timing and manner in which those citizens are charged, placed under arrest, or served with violations; and (d) the disposition of those charges and violations.

108. By virtue of the foregoing delegation of decision-making authority, Defendant E. Caban was policy-makers acting on behalf of Defendant NYC with respect to the (a) the treatment of hospitality businesses in the County and the citizens who own, operate, and are employed by them; (b) the filing of criminal charges and violations against such businesses and citizens; (c) the timing and manner in which those citizens are charged, placed under arrest, or served with violations; and (d) the disposition of those charges and violations. Accordingly, the Defendant Officer's actions in connection with Plaintiff, including their harassment and retaliation against him for exercising his constitutional rights, constituted official policy, custom, and practice of the NYC.

109. As a direct and proximate result of the foregoing acts, omissions, failures, policies, customs, and practices, Plaintiff was exposed to the Defendant Officer's illegal acts, which led to serious injury.

110. As a direct and proximate result of the aforesaid acts, omissions, failures, policies, customs, and practices of Defendant NYC, Plaintiff suffered and continues to suffer actual damages for reputational injury, lost past and

future earnings, lost business opportunities, mental anguish, and severe psychological pain and suffering.

## SIXTH CLAIM FOR RELIEF

42 U.S.C. § 1983 – Conspiracy to deprive Plaintiff of his property right in violation of the 14th Amendment

(Defendants Martin, J. Caban and Defendants Officers/John and Jane Does of the 60th precinct)

111. Plaintiff repeats and realleges the foregoing paragraphs 1-61.

112. Defendant J. Caban and Defendant Martin conspired to unlawfully obtain funds from the Plaintiff, after the Plaintiff declined to comply, they coordinated efforts with member of the 60th precinct to create an environment in which the Plaintiff's ability to conduct business would be severely hindered by persistent police harassment and intervention.

113. Following Plaintiff's refusal to pay Mr. Caban, police presence intensified significantly.

114. On several occasions, more than ten police vehicles and dozens of officers from the 60th precinct appeared outside Plaintiff's business.

115. The repeated displays of force frightened patrons and damaged Plaintiff's reputation in the community.

116. Customers became reluctant to patronize the establishment due to fear and intimidation associated with the repeated police activity.

117. The Plaintiff experienced considerable financial setbacks due to the unwillingness of prospective patrons to frequent the Plaintiff's business, stemming from the overwhelming presence of police officers from the 60th precinct that consistently gathered in front of the Plaintiff's premises day after day.

118. The Defendants Officers persisted in their harassment and maintained their presence outside the Plaintiff's business during operational hours, particularly on weekends, until the Plaintiff was compelled to cease operations of Juice & Moore around November 2023. Records show officers visited the Plaintiff's business more than 60 times in the course of the year.

119. As a direct and proximate result of Defendants Martin, J. Caban and Defendants Officers/John and Jane Does of the 60th precinct acts, , the 60th precinct presence and harassment intensified significantly that led to the Plaintiff's business closure. of Defendants Martin and Defendants Officers/John and Jane Does of the 60th precinct acted acting under color of state law reached an agreement or plan to deprive the Plaintiff of a constitutional right.

120. Defendants Martin, J. Caban and Defendants Officers/John and Jane Does of the 60th precinct acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard of

Plaintiff's rights, privileges, welfare, and well-being, and are guilty of egregious and gross misconduct towards Plaintiff. Plaintiff suffered and continues to suffer actual damages for reputational injury, lost past and future earnings, lost business opportunities, mental anguish, and severe psychological pain and suffering. By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

Plaintiff prays that this Court enter judgment for the Plaintiff and against each of the Defendants and grant:

A. compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount in excess of $6,000,000.00.

B. economic losses on all claims allowed by law;

C. special damages in an amount to be determined at trial;

D. punitive damages on all claims allowed by law against the Defendants;

E. attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

F. pre- and post-judgment interest at the lawful rate; and,

G. any further relief that this court deems just and proper, and any other appropriate relief a law and equity.

**PLAINTIFF REQUESTS A TRIAL BY JURY.**

Respectfully submitted this 25th day of August 2026.

By: B. Villalona

Bernarda A. Villalona
VILLALONA LAW, PLLC.
300 Cadman Plaza West, 12th fl.
Brooklyn, NY 11201
Tel: (833) 845-5256
Email: Bernarda@VillalonaLaw.com

By: ______________________________

Harry M. Daniels
(Pro Hac Vice Pending)
THE LAW OFFICES OF HARRY M. DANIELS, LLC.
4751 Best Road, Suite 205
Atlanta, GA 30337
Tel: (678) 664-8529
Email: Daniels@harrymdaniels.com